NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 20 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AMBER ROSE LAVENDER,

Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant-Appellee.

No.    18-35529

D.C. No. 3:17-cv-05766-MAT

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Mary Alice Theiler, Magistrate Judge, Presiding

Argued and Submitted July 6, 2020
Seattle, Washington

Before:  NGUYEN and BUMATAY, Circuit Judges, and SIMON,** District Judge.

Amber Rose Lavender appeals from the district court's judgment affirming

the decision of an administrative law judge ("ALJ") that she is not entitled to

supplemental security income.  We have jurisdiction under 28 U.S.C. § 1291 and

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Michael H. Simon, United States District Judge for the
District of Oregon, sitting by designation.

42 U.S.C. § 405(g).  Reviewing for substantial evidence, *see Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018), we affirm.

1.  Substantial evidence supports the ALJ's finding that Lavender's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective evidence."  Regarding her Crohn's disease, the ALJ reasonably discounted Lavender's September 2014 report to Dr. Nielsen that she "had up to 12 bowel movements a day and frequently alternated between diarrhea and constipation," because treatment notes from February 2016 "show [her] conditions remain well controlled."  Regarding Lavender's claimed difficulty remembering instructions and need for reminders, Dr. Magnuson-Whyte found Lavender's memory "[i]ntact."

In addition, the ALJ found that Lavender's "poor work history" and "significant disability focus" indicated "a lack of motivation rather than lack of ability."  This was also a clear and convincing reason to discredit Lavender's self-reported symptoms.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ's finding was supported by Dr. Wheeler's report that Lavender had never pursued state vocational services and that her "primary psychological barrier" was a "disability mindset" in which she "views herself as unable to work."  That the ALJ might have interpreted Dr. Wheeler's findings more favorably to Lavender is not a basis to upset the ALJ's findings.  *See Burch v. Barnhart*, 400 F.3d 676, 679

2

(9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

2. The ALJ did not err in discounting Dr. Irwin's conclusion that Lavender "would have difficulty performing work activities on a consistent basis without special or additional instruction due to memory problems as well as learning problems." "[T]o overcome the presumption of continuing nondisability arising from the first [ALJ's] findings of nondisability," Lavender needed to "prove 'changed circumstances' indicating a greater disability." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). The prior ALJ considered Lavender's self-reported inability to "remember instructions" and "difficulties learning" as well as a psychological examination in which Lavender "performed fair on memory tasks." Dr. Irwin interpreted similar self-reports and test results somewhat more restrictively, but the underlying evidence did not substantially change from the prior adjudicated period and did not suggest that Lavender's cognitive functioning had worsened. While Lavender asserts that her inability to follow instructions to manipulate a Kleenex box "was different and worse than [the] prior findings in the earlier claim record," this task assessed Lavender's concentration problems, which Dr. Irwin did not cite as a basis for concluding that Lavender would require special supervision at work.

3

3.  The ALJ did not err in discounting Dr. Wheeler's assessment that Lavender had marked impairments in her ability to perform work activities. "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Although a physician's clinical interview and mental status evaluation "are objective measures and cannot be discounted as a 'self-report,'" Dr. Wheeler's conclusions were not based on such "psychiatric methodology." *Id.* Dr. Wheeler "assumed" Lavender's intellectual assessment "by her simple vocabulary" and her self-reported "challenge learning things" in a volunteer position, but it was "not formally assessed," and in fact Dr. Wheeler suggested IQ testing. The ALJ's reason for discounting Dr. Wheeler's assessment of Lavender's limitations was legitimate and supported by substantial evidence. *See id.* (explaining that psychiatric methodology does not include claimant's "self-report that [s]he had trouble keeping a job").

4.  Even if at step two the ALJ improperly found that Lavender's Crohn's disease was not severe, this error was "inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

4

"Impairments that can be controlled effectively with medication are not disabling," *Warre v. Comm'r. of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), and the most recent medical evidence showed that Lavender's medication was effective in treating her Crohn's disease. Moreover, the ALJ found that Lavender had other severe impairments, so the ALJ assessed Lavender's residual functional capacity and in doing so considered all of her limitations—severe and otherwise.

5. The ALJ did not err in discounting evidence from Lavender's friend Peter Laserinko regarding the extent of her impairments. "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses," and "[i]nconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ found that Laserinko's statements were "not consistent with the overall record and . . . not consistent with [Lavender's] presentation to treating and examining providers." Lavender does not identify how Laserinko's statements were consistent with the overall record other than by citing the findings made by Drs. Irwin, Wheeler, and Nielsen, which the ALJ properly discounted.

**AFFIRMED.**